UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| PAULETTE HOLGUIN, | ) | No. CV 07-06468-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge.  The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner.  The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law.  After reviewing the matter, the Court

concludes that for the reasons set forth, the decision of the Commissioner must be reversed.

Plaintiff raises the following three issues:

1.   Whether the Administrative Law Judge ("ALJ") properly considered the treating physician's opinion;

2.   Whether the ALJ posed a complete hypothetical question to the vocational expert ("VE"); and

3.   Whether the ALJ appropriately considered lay witness testimony.

The Court's decision with regard to the first issue will incorporate and be dispositive as to the remaining issues.

**THE OPINION OF PLAINTIFF'S TREATING PHYSICIAN REGARDING MENTAL HEALTH ISSUES WAS IMPROPERLY REJECTED BY THE ALJ**

**A.   Procedural History.**

Plaintiff initially filed her application for Supplemental Security Income ("SSI") payments on December 2, 2003. (AR 390.) After administrative denials, she had a hearing before an ALJ on July 27, 2005, at which time the ALJ took testimony from Plaintiff, a VE, a medical expert ("ME"), and Plaintiff's mother, Catalina Holguin. (AR 482-529.) This resulted in an unfavorable decision issued on September 22, 2005. (AR 390-399.) In that decision, the ALJ noted that Plaintiff had been treated by Marti Parker, M.F.T., Ph.D., a psychotherapist, and noted Dr. Parker's report of January 2, 2004 (see AR at 327-330), in which Dr. Parker had stated that Plaintiff often had to be reminded or pressured by her mother to keep appointments;

that depression and hopelessness caused her to miss appointments; that she would frequently not shower and appear sloppy, while at other times she would wear makeup and appear neat and clean. The ALJ noted that Dr. Parker had speculated that Plaintiff's depression may be connected with severe diabetes. (See AR at 392.) The ALJ also noted that Plaintiff was seeing Dr. Leonard, a board certified psychiatrist, for medication. (AR 392.) Finally, the ALJ noted a consultative psychiatric evaluation ("CE") performed at the request of the Agency by Dr. Yacoub, a consulting psychiatrist. As the ALJ noted, Plaintiff complained of depression and withdrawal, but the ALJ's decision cited Dr. Yacoub's conclusions that Plaintiff appeared well-developed, well-nourished, and in no acute distress, was casually dressed and fairly groomed, and was cooperative and displayed appropriate behavior during the interview. Dr. Yacoub had diagnosed Plaintiff as having a depressive disorder, NOS. (See AR at 393, 340-342.)

The prior decision of this ALJ made no reference to the testimony of Plaintiff's mother, which resulted in an order of the Appeals Council on May 10, 2006 remanding the case to the ALJ. (AR 406-407.) The principal direction provided by the Appeals Council is reflected in the following paragraph of its Order:

"The decision reflects that the claimant's mother, Katie Holguin, appeared at the hearing and she provided testimony. However, the decision makes no further reference to such testimony. An audit of the hearing tape reveals that the claimant's mother testified: the claimant lives in the same household; she threatens suicide and she has made suicide attempts with sleeping pills or insulin, and the attempt with insulin resulted in hospitalization in 1999 or

1    2000; she has to be reminded to take her medication and if
2    she does not take her anti-depressant medication for 2 days,
3    then she cries constantly; she sometimes sleeps for 3-4
4    days; she gives the claimant insulin or she reminds the
5    claimant to take insulin daily, she is not left alone and if
6    the parents go out, someone is watching her; she fears that
7    the claimant will be gone, either leaving the house or doing
8    away with herself, if she is left alone; the claimant is
9    nervous around people and she can also get violent.  This
10   testimony needs to be addressed."
11   (AR 406.)

12

13       At the subsequent hearing, testimony was again taken from
14   Plaintiff's mother. (See AR at 530-548, and testimony at 539-542.)
15   This brief questioning included the following excerpt:
16       "Q... Would you agree that she has gotten some of her
17       depression under control with the therapy or not?
18       A. Yes, she's getting pretty good."
19   (AR 540.)

20

21       This was followed by a brief discussion of the fact that
22   Plaintiff's father had bought her a puppy, to which the ALJ agreed
23   that "Puppy's [sic] will do a lot, ..." (AR 541.) Plaintiff's mother
24   did indicate that she sometimes could not get Plaintiff out of her
25   room, in which Plaintiff locked herself, but this detail was not
26   followed up, and the questioning soon ended.  (See AR at 541-542.)
27       The ALJ then issued a decision (AR 14-20), which is the subject
28   of this current litigation.  In this unfavorable decision, the ALJ did

1  note that Plaintiff's mother testified that Plaintiff sometimes stays
2  in her room and only wants to sleep, and does not want to be around
3  people, and also noted a "function report" completed by Plaintiff's
4  father which corroborated the fact that Plaintiff stays in her room,
5  has severe depressive symptoms and gets scared. (AR 17, citing AR at
6  115-123.)

7      The ALJ's decision cited the January 2, 2004 report of Dr. Parker
8  (AR at 17, 327-330), but failed to acknowledge Dr. Parker's treatment
9  notes from the year 2006 (AR 453), which this Court's decision will
10 address in a subsequent section.  The ALJ also substantially discarded
11 the opinion of Plaintiff's treating psychiatrist, Dr. Leonard (AR 17),
12 which, again, this Court will address in a subsequent section.

13
14      **B.    <u>Relevant Medical Evidence</u>.**

15     Jim Leonard, M.D., a board certified psychiatrist, treated
16 Plaintiff for mental health issues.  In November, 2006, he completed
17 an "Interrogatory to Treating Physician," and the record contains his
18 treating notes from his initial consultation with Plaintiff on April
19 6, 2006 through the final note dated September 18, 2006.  In all,
20 eight office visits are chronicled in these notes. (<u>See</u> AR at 439-
21 452.)

22     Plaintiff also had a treating relationship over the course of
23 several years with Dr. Parker, a marriage and family therapist and
24 holder of a Ph.D.   Dr. Parker completed a mental disorder
25 questionnaire form on January 2, 2004 (AR 327-330).  The record also
26 contains a page of his "counseling notes" which indicate five visits
27 with Plaintiff from March 15, 2006 through November 15, 2006. (AR
28 453.)  Thus, during a substantial part of the year 2006, Plaintiff was

concurrently treating with both Dr. Parker and Dr. Leonard.

As noted, on February 18, 2004, Plaintiff received a psychiatric CE from Dr. Yacoub. (AR 340-342.) Although Dr. Yacoub's examination was referenced in the previous decision of ALJ Godfrey dated September 22, 2005 (see AR at 393), curiously, the Court can find no reference whatsoever to Dr. Yacoub's opinion in the current decision of ALJ Everstein, dated May 23, 2007. Despite that lacuna, the Commissioner argues to the Court that the ALJ in the current decision "relied upon the medical findings of examining psychiatrist, Ehab Yacoub, M.D." (See JS at 7), citing those pages of the AR which contain Dr. Yacoub's report, but failing to cite any part of the current decision which discusses it. Further, in the current decision, the Court cannot find any language which incorporates all or part of the prior decision.

C.  **Applicable Law**.

1.  **Treating Physician's Opinion**.

The Ninth Circuit has recently reaffirmed and strengthened its long-articulated view that treating physicians' opinions are entitled to substantial deference. <u>Orn v. Astrue</u>, 2007 WL 2034287 (9th Cir. 2007) concerned, in part, an ALJ's rejection of reports completed by Mr. Orn's two treating physicians, and the ALJ's reliance, instead, on the opinion of a consulting physician. Citing 20 C.F.R. §404.1527, the Opinion begins by reiterating the often-stated concept that, "By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (<u>Id</u>. at *4.) Indeed, the Court notes that under that same regulation, if the treating physician's opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

with other substantial evidence in the case, it will be given
controlling weight. (Id., citing 20 C.F.R. §404.1527(d)(2).)   The
Court also noted SSA's explanation of the ramifications of 20 C.F.R.
§404.1527 in Social Security Ruling ("SSR") 96-2p, which provides that
even in a case in which the treating source medical opinion is not
well supported by medically acceptable clinical and laboratory
diagnostic techniques or is inconsistent with other substantial
evidence in the record, it is not entitled to controlling weight, but
in many cases, will still be given the greatest weight and should be
adopted. (Id. at *5.)

Citing its prior opinion in Reddick v. Chater, 157 F.3d 715, 725
(9th Cir. 1998), the Court reiterated that in cases in which the
treating doctor's opinion is not contradicted by another doctor, it
may be rejected only for "clear and convincing" reasons supported by
substantial evidence in the record. (Id. at *6, citing Reddick, 157
F.3d at 725.)   In addition, only if there is substantial evidence in
the record which contradicts the opinion of the treating physician is
that opinion no longer entitled to controlling weight. (See Id.,
citing 20 C.F.R. §404.1527(d)(2).

## 2. **Evaluation of Mental Health Issues**.

In evaluating psychiatric impairments, 20 C.F.R. §404.1520a(e)(1)
and §416.920a(e)(1) require that consideration be given, among other
things, to activities of daily living ("ADL"); social functioning;
concentration, persistence or pace; and episodes of decompensation.
20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require that
consideration be given to "all relevant and available clinical signs
and laboratory findings, the effects of your symptoms, and how your

1   functioning may be affected by factors including, but not limited to
2   chronic mental disorders, structured settings, medication and other
3   treatment."

4        20 C.F.R. §§404.1545(c) and 416.945(c) require that consideration
5   be given to "residual functional capacity for work activity on a
6   regular and continuing basis" and "A limited ability to carry out
7   certain mental activities, such as limitations in understanding,
8   remembering, and carrying out instructions, and in responding
9   appropriately to supervision, co-workers, and work pressures in a work
10  setting, [which] may reduce your ability to ... work."

11       The types of relevant evidence to be assessed in making these
12  considerations are set forth in Social Security Ruling ("SSR") 85-16,
13  which include such factors as history, findings, and observations from
14  medical sources, reports of the individual's activities of daily
15  living and work activity, as well as testimony of third parties about
16  the individual's performance and behavior.

17       Under   20   C.F.R.   §404.1520a(c)(2)   and   §416.920a(c)(2),
18  consideration must be given to the extent to which a mental impairment
19  interferes with an "ability to function independently, appropriately,
20  effectively, and on a sustained basis ..."

21       The degree of functional limitations in four broad areas (ADLs;
22  social functioning; concentration, persistence or pace; and episodes
23  of decompensation) are evaluated; that is, as to the first three
24  functional areas, the following five-point scale is utilized: none,
25  mild, moderate, marked, and extreme.  With regard to the fourth area,
26  a four-point scale is utilized: none, one or two, three, four or more.
27  (20 C.F.R. §§416.920a(3),(4) and 404.1520a(c)(3),(4).

28       Following the September 2000 amendments to the regulations which

1  modified  20  C.F.R.  §404.1520a(e)(2)  and  §416.920a(e)(2),  the
2  Administrative Law Judge ("ALJ") is no longer required to complete and
3  attach a Psychiatric Review Technique Form ("PRTF").  Instead, these
4  regulations require that in the decision, the ALJ,

5      "[M]ust incorporate the pertinent findings and conclusions
6      based on the [PRTF] technique.  The decision must show the
7      significant history, including examination and laboratory
8      findings,  and  the  functional  limitations  that  were
9      considered in reaching a conclusion about the severity of
10     the mental impairment(s).  The decision must include a
11     specific finding as to the degree of limitation in each of
12     the functional areas described in paragraph (c) of this
13     section." [That is, ADLs; social functioning; concentration,
14     persistence or pace; and episodes of decompensation.]

15

16     Further guidance is provided in SSR 85-16, which, although it
17  does not specifically mention concentration, persistence or pace, does
18  note, "Ability to sustain activities, interests, and relate to others
19  over a period of time.  The frequency, appropriateness, and
20  independence of the activities must also be considered" as well as
21  "ability to function in a work-like situation."

22     When there is finding of "moderate" difficulties in the area of
23  maintaining concentration, persistence or pace, this factor must be
24  included in any hypothetical question posed at a hearing to a
25  vocational expert ("VE").  Thus, one court has held that referring
26  merely to "simple jobs" or "unskilled sedentary work" in a
27  hypothetical question is insufficient to describe and to accommodate
28  difficulties in this functional area.  See Newton v. Chater, 92 F.3d

1  688 (8th Cir. 1996).

2      The regulations do not provide a standard definition of
3  "moderate." (See 20 C.F.R. §416.902a(c)(4).) They do note, however,
4  that a finding of "none" or "mild" in the first three areas "will
5  generally [mean] that your impairment(s) is not severe, ..." See 20
6  C.F.R. §920a(d)(1).

7      The Commissioner has issued a Policy Operations and Manual of
8  Systems ("POMS"), which is an internal employee guidance manual.
9  While not having the force of law, this manual can be persuasive
10  authority. See Warre v. Commissioner, Social Sec. Admin., 439 F.3d
11  1001, 1005 (9th Cir. 1996). POMS provides guidance for the completion
12  of the Functional Capacity Assessment form (Form SSA-4734-F4-Sup) and
13  instructs that a reviewing source should check "'[M]oderately limited'
14  when the evidence supports the conclusion that the individual's
15  capacity to perform the activity is impaired." The degree and extent
16  of the capacity or limitation should be set forth in a narrative
17  format in the form.

18      HALLEX is the Hearings Appeals and Litigation Law Manual, which
19  is also an internal agency guide. HALLEX requires that when an ALJ
20  requests a consultative examination, the ALJ should provide the
21  corresponding state agency with a "medical source statement form."
22  (See HALLEX I-2-5-20.) Form HA-1152, the Medical Assessment of
23  Ability to do Work-Related Activities (Mental), provides definitions
24  for the ratings of none, slight, moderate, marked, and extreme. Thus,
25  moderate rating is defined as "there is moderate limitation in this
26  area but the individual is still able to function satisfactorily."

27      In LaCroix v. Barnhart, 465 F.3d 881, 888 (8th Cir. 2006), the
28  Eighth Circuit upheld an ALJ's finding that a claimant found to have

a moderate limitation in her ability to respond appropriately to work pressures in a usual work setting would still be able to satisfactorily function in this area. (See Id. at 888.)  The appellate Court noted that the evaluation form (HA-11) defined moderate as indicating that the individual could still function satisfactorily. (See, Id.)

### 3.   General Assessment of Functioning ("GAF").

The GAF scale is intended to reflect a person's overall level of functioning at or about the time of the examination, not for a period of at least 12 consecutive months, which is required for a finding of impairment or disability. (See 20 C.F.R. §§416.905, 416.920(c)(2006).)

GAF scores are intended to be used for clinical diagnosis and treatment, and do not directly correlate to the severity assessment set forth in Social Security regulations. (See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000), and American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, Text Revision 33 (4th Ed. 2000).

### D.   Analysis.

The ALJ rejected the opinion of treating psychiatrist Dr. Leonard because, her decision asserts, that opinion is based only on Plaintiff's self-reporting of subjective complaints rather than objective findings, and is not in fact based on objective testing. (AR 17.)  It is difficult for the Court to fathom how the ALJ conceived of this rationale, in view of the fact that the treatment notes contained in this record, already referenced by the Court in its previous

discussion, are extensive.  Moreover, even a cursory review of these notes indicates that the treating psychiatrist was not relying strictly on Plaintiff's self-reporting.  Moreover, there is extensive evidence of administration of drugs commonly associated with psychiatric conditions.

With regard to the ALJ's assessment of Dr. Parker, erroneously referred to as a "treating psychiatrist" in the decision (see AR at 17), the ALJ is even further off the mark.  Reference is made in the decision only to Dr. Parker's 2004 "mental disorder questionnaire form." (See AR at 17, 327-330.)  Nothing is made of Dr. Parker's counseling notes from 2006, which, as the Court has already indicated, seem to reflect no less than five counseling sessions, which occurred concurrently with Dr. Leonard's treatment.  Considering the extent of psychotherapy which Plaintiff underwent in 2006, from two separate treating sources, it is somewhat astonishing that the Commissioner would highlight Dr. Parker's 2004 report as support for the contention that Plaintiff "refuses therapy" and "refuses to apply herself." (See JS at 6-7, citing Dr. Parker's 2004 report at AR 327-328.)[1]  Finally, the Commissioner asserts that the ALJ relied upon the findings of the examining psychiatric CE, Dr. Yacoub, although, as the Court has noted, there is no reference whatsoever in the ALJ's decision to Dr. Yacoub's brief report.

Finally, despite the clear direction given by the Appeals Council

---

[1]  This position echoes the ALJ's finding that Plaintiff's reliability is diminished because she "has often not been compliant with medications and medical advice..." (AR at 18.)  This is a finding which can only be upheld if the evidence in the record, which documents Plaintiff's concurrent treatment in 2006 by a psychiatrist and a psychologist, is virtually ignored.  On remand, Plaintiff's credibility as to mental health issues will not be depreciated.

that the testimony of Plaintiff's mother should be considered, it was given short shrift by the ALJ in the current decision.  Yet, that testimony is quite material in terms of its documentation of Plaintiff's antisocial and bizarre behavior.

The assessment of mental functioning contained in the decision is so inadequate as to appear almost haphazard.  From some unknown and certainly unidentified source, the ALJ divines that Plaintiff is limited to only "simple, repetitive tasks." (AR 17.)  Seemingly, the ALJ based this evaluation on a State Agency consultant psychiatrist's finding that Plaintiff had a GAF score of 55 which, the ALJ indicates, generally indicates "only moderate mental functional limitations." (See, Id.)  This reliance on a GAF score to evaluate Plaintiff's mental status is nothing short of completely misguided.

Of necessity, this case must be remanded for yet another hearing.  Under the circumstances, it is extremely unfortunate that this must occur.  In its remand order, the Appeals Council clearly signaled that mental health issues had not been adequately evaluated in the prior decision.  Yet, that deficiency was repeated once again.  There is simply not sufficient evidence in the record from which the Court can make a dispositive decision as to disability.  On remand, however, the Court cautions that careful evaluation of this case can only be

//

//

//

//

//

//

//

accomplished by strict adherence to the applicable laws and regulations concerning mental health issues in Social Security cases.

For the foregoing reasons, this matter will be remanded for further hearing.

**IT IS SO ORDERED.**


DATED: August 15, 2008                     /s/
                              VICTOR B. KENTON
                              UNITED STATES MAGISTRATE JUDGE